**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARIA M.[1],<br>*Plaintiff*,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security,<br>*Defendant.* | No. 3:25-cv-01448 (VAB) |

**RULING AND ORDER ON MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

Maria M. has filed this administrative appeal under 42 U.S.C. Section 405(g) against Frank Bisignano, the Commissioner of Social Security ("Commissioner'), seeking to reverse or remand the Commissioner's decision on her claim for disability benefits. Mot. to Reverse or Remand the Decision of the Commissioner, ECF No. 13, (Feb. 20, 2026).

The Commissioner has moved to affirm the decision. Mot. for an Order Affirming the Commissioner's Decision, ECF No. 16 (May 21, 2026).

For the reasons explained below, Maria M.'s motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

[1] In opinions issued in cases under the Social Security Act, 42 U.S.C. Section 405(g), this Court will identify and reference any non-government party solely by first name and last initial in order to protect the privacy of interests of Social Security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

Sixty years of age at the alleged onset date, February 28, 2022, and sixty-two at the time of the final decision, Social Security Transcripts, ECF No. 10 ("Tr.") at 59, Maria M. had previously worked as a credit and collections representative for a gas company. *Id.* at 60 (Nov. 20, 2025) ("Tr.").[2] She filed her application for Social Security Disability Insurance ("SSDI") benefits, alleging a disability because of "rheumatoid arthritis, arthralgias, osteoarthritis, chronic migraines and heart disease." Mem. at 2. Following a hearing on August 21, 2024, Administrative Law judge ("ALJ") Alexander Borre "issued an unfavorable decision dated September 5, 2024." *Id.*

The ALJ's findings as to Maria M, in sum, are as follows: (1) she met "the insured status requirement of the Social Security Act through December 31, 2027," Tr. 16; (2) she "has not engaged in substantial gainful activity since February 28, 2022, the alleged onset date," *id.*; (3) she has severe impairments of "inflammatory arthritis, migraines, and spondylarthritis/right hip bursitis," *id*; (4) none of these impairments met or "medically equal[ ] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1"; *id.* at 17; (5) she had "the residual functional capacity to perform light work," *id.*; (6) she was "capable of performing past relevant work," *id.* at 22; and (7) she had "not been under a disability, as defined in the Social Security Act, from February 28, 2022, through the date of [the ALJ's] decision." *Id.* at 23.

More specifically, the ALJ defined her ability to perform light work, consistent with 20 CFR 404.1567(b), except that she "can occasionally climb ladders, ropes, or scaffolds, and can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl," *id.* at 17, and "is limited occasional handling bilaterally, frequent fingering with the right dominant upper extremity,

[2] Where the internal pagination of the transcript conflicts with the ECF-generated pagination, this Ruling and Order refers to the ECF-generated pagination.

moderate noise . . . . and only occasional exposure to vibration." *Id.* The ALJ also determined that Maria M. met "the criteria for past relevant work," *id.* at 22, and that she could meet "the physical and mental demands" of this prior "sedentary" work, which required "six hours of sitting, and lifting less than ten pounds." *Id.* And, based on the testimony of the vocational expert, the ALJ found that Maira M. "could still perform [her] past relevant work as it is performed in the national economy today." *Id.* at 23.

### B. Procedural History

On February 20, 2026, Maria M. moved to reverse or remand the decision of the Commissioner. Mot. to Reverse or Remand the Decision of the Commissioner, ECF No. 13, (Feb. 20, 2026); Mem. in Support of Motion to Reverse or Remand the Decision of the Commissioner, ECF No., 13-1 (Feb. 20, 2026) ("Mem.").

On May 21, 2026, the Commissioner filed his motion to affirm his decision. Mot. for an Order Affirming the Commissioner's Decision, ECF No. 16 (May 21, 2026); Mem. in Support of Motion for an Order Affirming the Commissioner's Decision, ECF No. 16-1 (May 21, 2026) ("Opp'n").

On June 4, 2025, Maria M. filed a reply to the Commissioner's motion. Pl.'s Reply, ECF No. 17 (June 4, 2026) ("Reply").

## II. STANDARD OF REVIEW

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were

supported by substantial evidence in the record and were based on the correct legal standard." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). It is generally "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999) (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To determine "whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

When "the Commissioner's decision applies the correct legal principles and is supported by substantial evidence, that decision will be sustained." *Kumar v. Berryhill*, No. 3:16-cv-1196 (VLB), 2017 WL 4273093, at *4 (D. Conn. Sept. 26, 2017) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). On the other hand, "[a]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). A court generally need not remand a case if the ALJ only committed harmless error, such that "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III. DISCUSSION

In order to be entitled to benefits under the Social Security Act, a plaintiff must demonstrate that they have a disability, defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This determination is made through a five-step evaluation.

First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 12 C.F.R. § 404.1520(b).

If they are not engaged in such activity, the ALJ must proceed to Step Two to determine whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* § 404.1520(c). An impairment will be considered severe if it significantly limits a claimant's ability to perform "basic work activities." *Id.*

If the claimant has a medically determinable severe impairment, then the ALJ proceeds to Step Three to determine whether any identified severe impairments meet or medically equal those identified in Appendix 1. *Id.* § 404.1520(d). These impairments are *per s*e disabling, assuming a claimant meets the duration requirement. *Id.*

If the claimant's impairments are not *per se* disabling, then the ALJ proceeds to Step Four, which entails assessing the claimant's residual functional capacity ("RFC"), or their ability to work in light of their limitations. *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e), 404.1545(a)(1).

At Step Five, the ALJ must establish whether the claimant's residual functional capacity will allow the performance of any past relevant work. If the claimant is unable to perform past relevant work, the ALJ bears the burden of proving that, accounting for the claimant's age,

education, work experience, and residual functional capacity, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* § 404.1520(g)(1). If the ALJ proves all of that, then the claimant is not disabled. *Id.*

The claimant bears the burden of proving the requirements of Steps One through Four, after which the burden shifts to the Agency to prove that the claimant is capable of working. *Carroll v. Sec'y of Health and Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("The burden is on the claimant to prove that he is disabled within the meaning of the Act . . . . However, if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform.").

Here, Maria M. claims that the Commissioner failed to support its evaluation of a prior administrative medical finding with substantial evidence. More specifically, Maria M. takes issue with the opinion of Mary Harkin, M.D, which provided the evidentiary basis for Maria M.'s residual functional capacity and related restrictions, Mem. at 6 –7, based on her analysis of Maria M.'s medical issues of rheumatoid, osteoarthritis, and migraines. *See id.* at 7.

In her view, the ALJ "should have discussed Dr. Harkin's explanations further before offering the general assertion that they were supported by a 'detailed explanation' and the fact that Dr. Harkin rejected a medical source statement." Moreover, "Dr. Harkin placed a strong emphasis on the July 2023 rheumatology note showing marked improvement after the addition of Humira, only considering one evidentiary item thereafter – a November 28, 2023 letter," although there was evidence "available to the Agency at the time of its final decision [which] deeply undermined this improvement." *Id.* at 13.

In short, in Maria M.'s view, there is an insufficient basis for the ALJ's decision from a supportability standpoint, because of the "different characterization of the severe impairments," and from a consistency standpoint as well, because there was "no consideration of whether evidence after July 2023 was consistent with Dr. Harkin's assessment of the evidence." *Id.* at 15. Indeed, in her view, "the record contained an increase in objective findings in rheumatology exams and notes of ineffective measures." *Id.* And – again, in Maria M.'s view – a remand might "change" her residual functional capacity "in the form of a limitation in how long Plaintiff can remain seated at one time or how long Plaintiff can remain seated cumulatively in a workday." *Id.*

In response, the Commissioner argues that "the ALJ reasonably found that Plaintiff's impairments, while limiting, were not so restrictive as to preclude a range of light work," Opp'n at 7 (citation omitted), and that "[s]ubstantial evidence, including the findings of State agency physician Dr. Mary Harkin, M.D. as well as Plaintiff's treatment records, examination findings, and improvement with treatment supported the ALJ's RFC determination." *Id.* (citation omitted).

Even more specifically, as to the ALJ's findings with respect to those who had treated Maria M., such as Lea Tripodi, PA-C, the opinion "was consistent with and supported by the record." *Id.* at 9. As to the record with respect to Maria M.'s rheumatology issues, the Commissioner points out that "treatment notes from June 2023 through June 2024 all show consistent and noticeable improvement in the majority of her joint pains, finger swelling, and morning-stiffness since initiating prednisone." *Id.* at 10 (citing Tr. 444, 950, 956, 963, 972, and 979). And, to the extent that accommodations needed to be made for how long she can sit, "the ALJ accounted for these limitations by limiting [her] to light work with postural limitations, as well as occasional handling bilaterally, frequent fingering with the right dominant upper

extremity." *Id.* (citing Tr. 17). The Commissioner thus argues that there is not a sufficient basis in the record to undermine the substantial evidence supporting the RFC. *Id.* at 11.[3]

In reply, after arguing that the Commissioner's main arguments miss her point, Maria M. reiterates its main point: the "ALJ's favorable treatment of Dr. Harkin's [medical opinion] did not comply with 20 C.F.R. § 404.1520c(b)(2) and did not have the support of substantial evidence." Reply at 3.

The Court disagrees.

Under the current regulations, "the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources.'" *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (quoting 20 C.F.R. § 404.1520c(a)). Instead, in considering various medical opinions, the Commissioner is required to consider factors including "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

The ALJ must "articulate how [he] considered the medical opinions" and "how persuasive [he] f[ound] all of the medical opinions." *Id.* at 8 (alterations in original) (citation and internal quotation marks omitted). The ALJ is not required to specifically discuss each of the factors, but the ALJ must expressly consider "the supportability and consistency factors." *Id.* 20 C.F.R. §§

[3] The Commissioner also raises an argument about how the ALJ properly considered Maria M.'s symptoms and subjective complaints. *Id.* at 12–13. This argument, however, will only be addressed to the extent necessary to rule on the motion to reverse the Commissioner's decision.

404.1520c(b)(2), 416.920c(b)(2) ("[S]upportability . . . and consistency . . . are the most important factors . . . [and] [t]herefore, [the ALJ] will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] determination."); *see also Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[I]n cases where the new regulations apply, an ALJ *must* explain [their] approach with respect to the first two factors when considering a medical opinion."), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

For the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion(s) . . . , the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). For the consistency analysis, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

In doing this, "an ALJ should not consider the persuasiveness of each medical opinion in a vacuum but must adequately account for the consistency of the various opinions with each other." *Jennifer G. v. Comm'r of Soc. Sec.*, No. 5:22-CV-996 (MAD/ML), 2023 WL 8435991, at *8 (N.D.N.Y. Sept. 6, 2023) (collecting cases) (internal quotation marks omitted), *report and recommendation adopted sub nom.*, *Jennifer G. v. Comm'r of Soc. Sec.*, No. 5:22-CV-996 (MAD/ML), 2023 WL 7277260 (N.D.N.Y. Nov. 3, 2023); *Glenn G. v. Kijakazi*, No. 3:22-CV-824 (RMS), 2023 WL 2477501, at *11 (D. Conn. Mar. 13, 2023) (noting that "the ALJ failed to assess and compare Dr. Cordier's opinion in relation to other medical opinions in the record").

In this case, and on this record, the ALJ properly considered the supportability and the consistency of the various medical opinions with the record as a whole, and also considered

whether such medical opinions could be supported and consistent with all of the medical and nonmedical evidence regarding the claim. *See David C. v. Comm'r of Soc. Sec.*, 1:22-CV-00965, 2024 WL 376598, *4 (W.D.N.Y. February 1, 2024) (finding that the ALJ was not required to specifically assess the consistency between two opinions as long as he considered their consistency with the record as a whole); *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-cv 1085, 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with *all* medical and nonmedical evidence in a claim."); *Rushford v. Kijakazi*, No. 23-cv-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) ("As required, the ALJ addressed each opinion in turn, explaining why – or why not – he found each opinion to be 'supported' by the record and 'consistent' with the other evidence.").[4]

Accordingly, at least on this record, the ALJ did not commit an error, the decision will not be reversed on that basis, but instead the ALJ's decision will be affirmed.

## IV. CONCLUSION

For the reasons explained above, Maria M.'s motion, ECF No. 13, is **DENIED**, and the Commissioner's motion, ECF No. 16, is **GRANTED**.

The Clerk of Court is respectfully directed to close the case.

---

[4] Significantly, while Maria M. raises issues about the consideration of medical information from 2023, *see* Mem. at 13 ("Dr. Harkin placed a strong emphasis on the July 2023 rheumatology note showing marked improvement after the addition of Humira, only considering one evidentiary item thereafter – a November 28, 2023 letter," although there was evidence "available to the Agency at the time of its final decision [which] deeply undermined this improvement."), from both a supportability and consistency perspective, there is record evidence of improvement as to some of Maria M.'s symptoms more recently, in 2024. *See* Tr. at 972 ("Prednisone trial provided noticeable improvement in majority of her joint pains, finger swelling, and morning stiffness.")(quoting from the Jan. 30, 2024 progress notes of Lea Tripodi, PA-C); *see also* Tr. at 979 (same) (quoting from the June 4, 2024 progress notes of Lea Tripodi, PA-C).

**SO ORDERED** at New Haven, Connecticut, this 25th day of September, 2026.

*/s/ Victor A. Bolden*
Victor A. Bolden
United States District Judge